**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**VICTORIA SUSAN SMITH,**

        **Plaintiff,**

**v.**                                    **Case No.: 3:20-cv-00776**

**KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,**

        **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 8, 11).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**, the Commissioner's request for judgment on the pleadings be **GRANTED**, the Commissioner's decision be

**AFFIRMED,** and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

Plaintiff Victoria Susan Smith ("Claimant") filed for DIB in September 2018, alleging a disability onset date of December 13, 2017 due to "fibromyalgia and osteoarthritis." (Tr. at 171, 223). After the Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration, Claimant filed a request for an administrative hearing, which was held on February 4, 2020 before the Honorable Brian W. Wood, Administrative Law Judge (the "ALJ"). (Tr. at 33-66). By written decision dated February 27, 2020, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 7-22). The ALJ's decision became the final decision of the Commissioner on November 4, 2020 when the Appeals Council denied Claimant's request for review. (Tr. 1-5).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 6, 7). Claimant filed a Brief in Support of Judgment on the Pleadings, (ECF No. 8), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 11). The time period within which Claimant could file a reply to the Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 60 years old on her alleged disability onset date and 62 years old on the date of the ALJ's decision. (Tr. at 36). She completed high school, communicates in English, and previously worked as a legal assistant and bank teller. (Tr. at 38, 222,

224).

### III.   Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite

3

the limitations of his or her impairments. *Id*. § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id*. § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. WeinBerger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id*. § 404.1520a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id*. § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying

4

information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id*. § 404.1520a(d)(1).

Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id*. § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental function. *Id*. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2022. (Tr. at 12, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since December 13, 2017, the alleged disability onset date. (*Id*., Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "osteoarthritis of the bilateral knees, asthma, obstructive sleep apnea, irritable bowel syndrome, iron

5

deficiency anemia, vitamin D deficiency, and obesity." (*Id.*, Finding No. 3). The ALJ considered Claimant's right fibular shaft enthesopathy versus old, healed fracture, history of right coccyx fracture, gastroesophageal reflux disease (GERD), hypothyroidism, hypertension, and anxiety, but found that the impairments were non-severe. (Tr. at 12-14). The ALJ also determined that Claimant's reported fibromyalgia was not a medically determinable impairment because the record lacked formal testing for, or a diagnosis of, fibromyalgia; however, the ALJ noted that he would consider the related limitations described by Claimant when assessing her RFC. (Tr. at 14). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 14-15, Finding No. 4). Accordingly, he determined that Claimant possessed:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except that she could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs; she could occasionally balance, stoop, kneel, crouch, and crawl; she could occasionally use the bilateral lower extremities for the operation of foot controls; she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extreme heat and cold, wetness, humidity, and vibration; and, she must avoid concentrated exposure to hazards such as heights and moving machinery.

(Tr. at 15-17, Finding No. 5). At the fourth step, the ALJ determined that Claimant could perform her past relevant work as a legal investigator. (Tr. at 17-18, Finding No. 6). Therefore, the ALJ concluded that Claimant was not disabled and was not entitled to benefits. (Tr. at 18, Finding No. 7).

## IV.   <u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts two challenges to the Commissioner's decision: (1) the Appeals Council erred in finding that there was not a reasonable probability that additional

6

evidence would change the outcome of the ALJ's decision, and (2) the ALJ erred in concluding that Claimant was not disabled pursuant to Grid Rules 201.06 or 202.06. (ECF No. 8 at 4-9). In response to Claimant's challenges, the Commissioner argues that the "substantial evidence" standard of review is highly deferential to the Commissioner's decision; the medical source statement provided by Claimant's physician was not new and material; and the ALJ was not required to consider the Grids because the Grids are not considered until step five of the sequential evaluation, and the ALJ found that Claimant was not disabled at step four. (ECF No. 11 at 4-8).

## V.    Relevant Evidence

The undersigned examined all of the evidence in the record. The following summary of the medical evidence is limited to the records that are most pertinent to the issues in dispute.

### A. Treatment Records

Claimant's April 18, 2018 knee x-rays showed mild degenerative changes. (Tr. at 380). Claimant told her family care physician, Christina Webb, M.D., on July 13, 2018 that her right knee was "really hurting," but she stated that she could tolerate the pain and declined an MRI. (Tr. at 388). Claimant also mentioned that she did not have any side effects from iron supplements, but she did not notice any improvement in energy. (*Id.*). There were no abnormalities in Claimant's physical examination other than her severe obesity. (Tr. at 388). Claimant ambulated normally and had normal muscle strength, memory, and sensation. (*Id.*). Dr. Webb diagnosed Claimant with hypertension, coccyx fracture, anxiety, iron deficiency anemia, and morbid obesity. (Tr. at 388-89).

Claimant began physical therapy for bilateral knee pain on August 7, 2018. She

stated that she experienced knee pain for approximately two years, but it was worsening. (Tr. at 461). On August 20, 2018, Claimant confirmed to orthopedic surgeon, Vishavpreet Singh, M.D., that she did not have any issues other than knee pain. (Tr. at 374). Dr. Singh noted some abnormal musculoskeletal findings, but recorded that Claimant was sitting comfortably, had good mobility, and her strength and sensation were intact. (Tr. at 376). Claimant's updated x-rays indicated bilateral arthritis in Claimant's knees and probable fibrodysplasia of her left fibula. (Tr. at 379). Dr. Singh determined that Claimant's osteoarthritis was not advanced enough to warrant surgical intervention. (Tr. at 376). He administered a steroid injection in Claimant's left knee. (*Id.*). Claimant's left knee MRI on September 2, 2018 reflected mild arthritis with no acute findings or meniscus tear. (Tr. at 354, 368). Her left tibia-fibula MRI was negative. (*Id.*).

On October 4, 2018, Claimant followed up with orthopedist Chad Lavender, M.D. She related that the left knee injection that she received during her last visit improved her symptoms, but she now experienced left knee pain and popping. (Tr. at 368). Claimant complained of tenderness in the medial joint space of her left knee and pain on deep flexion. (Tr. at 369). Dr. Lavender observed crepitus on range of motion testing, but Claimant had normal range of motion; no effusion, erythema, or warmth; and intact sensation and strength. (Tr. at 369). Dr. Lavender diagnosed Claimant with mild to moderate left knee arthritis and right fibula fibrous dysplasia. (*Id.*). He recommended left knee injections. (*Id.*).

Claimant presented to Dr. Webb on October 15, 2018. She reported muscle aches, as well as joint and back pain, but Claimant denied weakness, numbness, shortness of breath, wheezing, exercise intolerance, diarrhea, abdominal pain, or

incontinence. (Tr. at 419). She was morbidly obese, but her other physical examination findings were otherwise normal, including normal muscle strength, gait, station, and sensation. (*Id.*). Dr. Webb diagnosed Claimant with knee osteoarthritis and severe obesity. (Tr. at 420). During a subsequent appointment with Dr. Webb on January 15, 2019, Claimant advised that the left knee injection may have helped a little, but she suffered from pain in her right lower leg. (Tr. at 415). Dr. Webb did not record any physical examination findings during that visit. (*Id.*). Claimant's diagnoses included hypertension, tobacco dependence, anxiety, severe obesity, and impacted ear wax. (*Id.*).

On January 25, 2019, Claimant denied everything in her review of symptoms, including excessive fatigue. (Tr. at 543-44). There were no abnormalities in her physical examination. (Tr. at 544-45). On March 5, 2019, Claimant presented to the emergency department at Pleasant Valley Hospital, reporting that she experienced chest pain for the past week that radiated up into her neck and down her left arm. (Tr. at 483). She denied fever, chills, blurred vision, sore throat, heart palpitations, shortness of breath, wheezing, abdominal pain, nausea, vomiting, constipation, diarrhea, weakness, headache, numbness, confusion, anxiety, irritability, or panic attacks. (Tr. at 483-84). Other than being obese and appearing uncomfortable, Claimant's physical examination was entirely normal. (Tr. at 486-87). Her chest x-ray was likewise unremarkable. (Tr. at 490). Claimant was diagnosed with chest pain and GERD. (*Id.*).

Later that month, on March 18, 2019, Claimant followed up with Dr. Lavender. She reported that her left knee was "50 percent improved" after a Monovisc injection three months earlier, but her right knee symptoms were worse. (Tr. at 537). Claimant

denied all symptoms on her review of systems with the exception of knee pain. (*Id.*).

Dr. Lavender administered an injection in Claimant's right knee. (Tr. at 539).

### B. Agency Medical and RFC Assessments

On November 26, 2018, state agency physician Amy Wirts, M.D., concluded based on her review of the record that Claimant's severe impairments included osteoarthritis and major joint disfunction. (Tr. at 72). Dr. Wirts determined that Claimant could perform a range of light-level work. (Tr. at 73-75). At the reconsideration level of review on February 13, 2019, Caroline Williams, M.D., found that Claimant's osteoarthritis and obesity were severe impairments, but her hyperlipidemia, hypertension, sleep-related breathing disorder, and thyroid gland disorder were non-severe. (Tr. at 87). Dr. Williams affirmed Dr. Wirt's RFC assessment. (Tr. at 86-87). On February 18, 2019, psychologist Debra Lilly, Ph.D., found that Claimant had mild mental functional limitations, and she did not have any severe mental impairments. (Tr. at 84).

### C. Claimant's Testimony

Claimant testified during her administrative hearing on February 4, 2020 that she quit working as a bank teller in December 2017 because it was too hard for her to stand most of the day. (Tr. at 38-39). Prior to that job, she worked mostly in a seated position as a legal assistant. (Tr. at 39). Claimant alleged that she was disabled because of fibromyalgia, which flared up in bad weather, and osteoarthritis in her knees. (Tr. at 39-40). She claimed that she was diagnosed with fibromyalgia approximately 15 years earlier and her physician, Dr. Webb, prescribed medications to treat it. (Tr. at 40). Claimant testified that fibromyalgia caused pain and swelling, particularly in her knees and ankles. (Tr. at 40). According to Claimant, she could not sit or stand for long

periods or walk extensively, and she was easily fatigued. (Tr. at 41, 55). In a typical day, she packed her husband's lunch, studied her Bible, provided food and water to her goat and dogs, performed minor housework, took a two-hour nap, and cooked dinner. (Tr. at 46-47, 55). Claimant also shopped for groceries every three weeks, played Legos and other games with her grandson when he visited, and enjoyed watching television and reading. (Tr. at 47). Claimant rated her pain an average of 6 on a 10-point scale. (Tr. at 52-53).

### D. Evidence Submitted to Appeals Council

On May 14, 2020, Dr. Webb completed a check-box form entitled Fibromyalgia Medical Source Statement. She noted that she treated Claimant for the past six years, and she stated that Claimant met the American College of Rheumatology criteria for fibromyalgia with 18 tender points. (Tr. at 28). Dr. Webb identified Claimant's symptoms, signs, and associated conditions; other diagnosed impairments; location, nature, and precipitating factors of pain; and functional limitations. (Tr. at 28-31). Specifically, Dr. Webb checked the boxes indicating that Claimant suffered from hypersensitivity to touch, fatigue, chronic widespread pain, sleep disturbance, subjective swelling, joint stiffness, muscle spasms, morning stiffness, irritable bowel syndrome, frequent severe headaches, tinnitus, numbness, tingling, dizziness, hypothyroidism, hypoglycemia, GERD, anxiety, and depression. (Tr. at 28). Dr. Webb assessed that Claimant could only sit in one hour increments for a total of approximately two hours in an eight-hour day. (Tr. at 29). She further opined that Claimant needed to walk for 15 minutes at 90-minute intervals, take unscheduled 30-minute breaks every two hours, and elevate her legs to waist height at least 50 percent of the workday. (Tr. at 30). Dr. Webb assessed additional exertional, postural, and

manipulative limitations, and she concluded that Claimant would be off task for 20 percent of the workday and absent from work more than four days per month. (Tr. at 30-31).

**VI.**   **Scope of Review**

The Court may remand the Commissioner's decision for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand is appropriate when the Commissioner's decision is not supported by substantial evidence, the Commissioner incorrectly applies the law in reaching the decision, or the basis of the Commissioner's decision is indiscernible. *See Brown v. Astrue,* Case No. 8:11–03151–RBH–JDA, 2013 WL 625599 (D.S.C. Jan. 31, 2013); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

A sentence six remand, by contrast, does not involve the correctness of the Commissioner's decision. Rather, a sentence six remand "may be ordered in only two situations: (1) where the Commissioner requests remand before answering the complaint, or (2) where new, material evidence is adduced that was for good cause not presented before the agency." *Snider v. Colvin,* Civil Action No. 6:12-cv-00954, 2013 WL 4880158, at *4 (S.D.W. Va. Sept. 12, 2013) (*citing Shalala v. Schaefer,* 509 U.S. 292, 297 n.2 (1993)). For the purpose of a sentence six remand, evidence is considered new only if it is not "duplicative or cumulative." *Wilkins v. Sec., Dep't of Health and Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991); *see also Bradley v. Barnhart,* 463 F.Supp.2d 577, 581 (S.D.W. Va 2006). New evidence is material if it "bear[s] directly and substantially on the matter in dispute," and generates a "reasonable possibility that the new evidence would have changed the outcome of the determination." *Bradley,* 463 F.Supp.2d at 579-80 (citing *Bruton v. Massanari,* 268 F.3d 824 (9th Cir. 2001)).

In the Fourth Circuit, remand under sentence six for assessment of new and material evidence is appropriate if four prerequisites are met: (1) the evidence is relevant and not cumulative; (2) the Commissioner's decision "might reasonably have been different" had the evidence been presented; (3) Claimant established good cause for not submitting the evidence earlier; and (4) Claimant offers "at least a general showing of the nature" of the newly discovered evidence. 42 U.S.C. 405(g); *Finney v. Colvin*, 637 F. App'x 711, 715–16 (4th Cir. 2016). The burden of showing that remand is appropriate rests with the claimant. *See Fagg v. Chater,* 1997 WL 39146, at *2 (4th Cir. 1997); *Ferguson v. Commissioner of Social Sec.,* 628 F.3d 269, 276 (6th Cir. 2010) (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)). Under sentence six, "the parties must return to the court after remand to file modified findings of fact. The

reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings." *Hay v. Colvin*, No. 8:15-CV-00236-JDA, 2016 WL 536746, at *3 (D.S.C. Feb. 11, 2016) (citations omitted).

## VII.  **Discussion**

Claimant's challenges concern new evidence relating to fibromyalgia and the ALJ's failure to find Claimant disabled under the Grid rules. Each argument is addressed below, in turn.

### *A. Fibromyalgia*

In *Arakas*, the Fourth Circuit discussed the unique nature of fibromyalgia. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), The Court explained that symptoms of the disease are "entirely subjective," with the exception of trigger-point evidence, and there "are no laboratory tests for the presence or severity of fibromyalgia." *Id.* at 91, 96. In fact, individuals suffering from fibromyalgia will typically have no abnormalities in physical examinations, such as muscle weakness, abnormal reflexes, joint inflammation, or limited range of motion. *Id.* at 91. For that reason, an ALJ cannot discredit a Claimant's fibromyalgia symptoms based on lack of objective evidence because the disease "eludes such measurement." *Id.* at 96.

However, while an ALJ cannot dispute a claimant's subjective symptoms based on lack of objective evidence, objective evidence is necessary to establish a medically determinable impairment of fibromyalgia at step two of the sequential evaluation. SSR 12-2p, 2012 WL 3104869, at *3. Specifically, the claimant must show that a physician diagnosed the claimant with fibromyalgia, and the diagnosis is not inconsistent with other evidence in the case record. *Id.* at *2. In addition, the claimant must produce evidence that satisfies the 1990 ACR Criteria for the Classification of Fibromyalgia or

the 2010 ACR Preliminary Diagnostic Criteria. *Id*. The 1990 ACR Criteria for the

Classification of Fibromyalgia requires all three of the following:

> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.

> 2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.

> a. The 18 tender point sites are located on each side of the body at the:
> • Occiput (base of the skull);
> • Low cervical spine (back and side of the neck);
> • Trapezius muscle (shoulder);
> • Supraspinatus muscle (near the shoulder blade);
> • Second rib (top of the rib cage near the sternum or breast bone);
> • Lateral epicondyle (outer aspect of the elbow);
> • Gluteal (top of the buttock);
> • Greater trochanter (below the hip); and
> • Inner aspect of the knee.

> b. In testing the tender-point sites, the physician should perform digital palpation with an approximate force of 9 pounds (approximately the amount of pressure needed to blanch the thumbnail of the examiner). The physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site.

> 3. Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from fibromyalgia. Therefore, it is common in cases involving fibromyalgia to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

*Id*. at *2-3. Alternatively, the 2010 ACR Preliminary Diagnostic Criteria requires all

three of the following criteria:

> 1.  A history of widespread pain;

2. Repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*Id.* at *3.

In this case, the ALJ considered at step two of the sequential evaluation Claimant's testimony that she suffered from fibromyalgia and was diagnosed with the condition approximately 15 years earlier. (Tr. at 14). However, the ALJ found that the record contained "little to no evidence of formal testing for, and diagnosis of, fibromyalgia." (*Id.*). The ALJ found that Claimant's statements alone were insufficient under 20 C.F.R. § 404.1521 to establish the existence of a medically determinable impairment, and she must produce objective evidence from an acceptable medical source. (*Id.*). Although the ALJ determined that Claimant's fibromyalgia was not a medically determinable impairment, he noted that he included Claimant's fibromyalgia-related limitations that were supported by the record in Claimant's RFC assessment. (*Id.*).

Claimant contends that after she read the ALJ's decision in which the ALJ concluded that her fibromyalgia was not a medically determinable impairment, she obtained additional evidence in the form of a Fibromyalgia Medical Source Statement from her family care physician, Dr. Webb, which she submitted to the Appeals Council. (ECF No. 8 at 5). Upon reviewing the additional evidence from Dr. Webb, the Appeals Council declined to review Claimant's case. (Tr. at 1). The Appeals Council found that there was not a reasonable probability that the evidence would change the outcome of

the ALJ's decision. (Tr. at 2). Therefore, the Appeals Council did not exhibit Dr. Webb's medical source statement. (*Id*.).

Although Claimant mentions that the ALJ "[i]nexplicably" concluded that her fibromyalgia was not a medically determinable impairment, she does not assert in this action that the ALJ's step two finding is unsupported by substantial evidence. (ECF No. 8 at 4-7). Rather, Claimant argues that the Appeals Council erred in concluding that there was not a reasonable possibility that Dr. Webb's Fibromyalgia Medical Source Statement would change the outcome of the ALJ's decision. (*Id*.).

The Appeals Council must review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a). However, the Appeals Council must only consider a claimant's case on the basis of new evidence if the claimant shows good cause for not informing the SSA about or submitting the evidence earlier for one of three specified reasons. 20 C.F.R. § 404.970(b). A claimant can establish good cause by demonstrating that "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him or her] from informing [the SSA] about or submitting the evidence earlier." 20 C.F.R. § 404.970(b). Examples of such circumstance include, but are not limited to, serious illness, death of an immediate family member, accidental destruction of important records, a circumstance in which the claimant actively and diligently sought evidence from a source and the evidence was not received or received less than five business days prior to the hearing, or the claimant received a hearing level decision on the record and the Appeals Council reviewed the decision. *Id*. at § 404.970(b)(3).

17

Critically, the Court does not have jurisdictional authority to evaluate the Appeals Council's decision to not grant review of the ALJ's decision. *Mabel H. v. Saul*, No. 6:18-CV-68, 2019 WL 2997853, at \*3 (W.D. Va. June 24, 2019), *report and recommendation adopted sub nom. Harris v. Saul*, 2019 WL 2996927 (W.D. Va. July 9, 2019). When the Appeals Council denies review, the ALJ's decision becomes the final decision of the Commissioner "at which point it is the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny." *Id.* (citing 20 C.F.R. §§ 404.967–981. The Appeals Council is not required to provide any reasons for denying review, although its reasoning is often helpful to the Court reviewing the case. *Id.* (citing *Meyer v. Astrue*, 662 F. 3d 700, 702, 706 (4th Cir. 2011) ("Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that 'an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review.")).

When the Appeals Council incorporates evidence into the record, it "becomes part of the record that the court reviews to determine whether the Commissioner's decision is supported by substantial evidence." *Gilbert v. Saul*, No. 7:18CV00526, 2020 WL 7213486, at \*11 (W.D. Va. Feb. 20, 2020) (citing *Wilkins*, 953 F.2d at 96). In that event, the Court reviews the decision under sentence four of 42 U.S.C. § 405(g) and may enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* In contrast, any evidence that Claimant did not submit to the Appeals Council, or that the Appeals Council did not incorporate into the record, is reviewed by the Court under the narrower confines of sentence six of 42 U.S.C. § 405(g). *Id.* As noted,

18

sentence six allows a court to remand for the consideration of additional evidence if it is new and material, and good cause exists for its late submission, and the claimant must "present to the remanding court at least a general showing of the nature of the new evidence." *Id.* (citation omitted). Under sentence six, the Court can only remand the case for "additional evidence to be taken," and it may not rule as to the correctness of the administrative determination *Id.* (citations omitted).

Here, the Appeals Council did not exhibit Dr. Webb's opinion. Therefore, the Court reviews whether remand is warranted under sentence six, considering whether (1) the evidence is relevant and not cumulative; (2) the Commissioner's decision "might reasonably have been different" had that evidence been presented; (3) good cause for failure to submit the evidence before the Commissioner is established; and (4) Claimant offers "at least a general showing of the nature" of the newly discovered evidence. 42 U.S.C. 405(g). As Claimant must establish all four prerequisites to justify remand under sentence six of 42 U.S.C. § 405(g), the Court need not consider the factors in any particular order.

As an initial matter, the undersigned finds that Claimant undoubtedly fails to establish good cause for her untimely submission of Dr. Webb's opinion. "The Fourth Circuit has suggested a high bar for establishing 'good cause' for a sentence six remand." *Jardine v. Saul*, No. 1:19CV12, 2020 WL 5778184, at *14 (M.D.N.C. Sept. 1, 2020), *report and recommendation adopted,* 2020 WL 5763492 (M.D.N.C. Sept. 28, 2020) (citations omitted). Claimant very clearly indicates that upon reading the ALJ's decision that her fibromyalgia was not a medically determinable impairment, she solicited additional evidence from Dr. Webb. (ECF No. 8 at 5). However, the fact that Claimant waited until after she received an unfavorable decision to obtain additional

evidence does not establish good cause for remand under sentence six. *See, e.g., Anika M. V. v. Saul*, No. 2:19CV652, 2021 WL 684519, at *13 (E.D. Va. Jan. 7, 2021), *report and recommendation adopted,* 2021 WL 683162 (E.D. Va. Feb. 22, 2021); *Gilbert v. Saul*, No. 7:18CV00526, 2020 WL 7213486, at *11 (W.D. Va. Feb. 20, 2020) (finding that good cause was not established where "the only reason the additional evidence was submitted to the Appeals Council was due to the ALJ's decision to give little weight to Dr. Brown's opinions. Only then, did counsel decide it would be a good idea to submit additional treatment notes from Dr. Brown and the evaluation by Dr. Stephenson."); *Wooding v. Comm'r of Soc. Sec.*, No. 4:10cv6, 2010 WL 4261268, at *6 (W.D. Va. Oct. 29, 2010) ("Good cause does not exist based solely on Plaintiff's after-the-fact desire to contradict the Vocational Expert's opinion and the ALJ's subsequent findings.").

Claimant offers "nothing to show any active diligence on [her] part in securing the information" from Dr. Webb before the ALJ rendered his decision. *Midkiff v. Berryhill*, No. 2:18-CV-00338, 2018 WL 8620562, at *15 (S.D.W. Va. Dec. 10, 2018), *report and recommendation adopted,* 2019 WL 1258845 (S.D.W. Va. Mar. 19, 2019). In fact, Claimant's failure to obtain Dr. Webb's opinion earlier was particularly perplexing given the fact that Dr. Webb was Claimant's treating provider, Claimant routinely saw Dr. Webb throughout the record, and Claimant was able to obtain the opinion from Dr. Webb expediently upon reviewing the ALJ's decision. *Howell v. Saul*, No. 218CV01323BHHMGB, 2019 WL 3416613, at *11 (D.S.C. July 10, 2019), *report and recommendation adopted,* 2019 WL 3413244 (D.S.C. July 29, 2019) ("With respect to Dr. Mitchell's 2018 Letter, Plaintiff's total failure to explain his late submission is particularly perplexing, given that he admittedly saw Dr. Mitchell for

well-over a decade and had ample opportunity to obtain an opinion [...] Thus, Plaintiff's failure to offer a reasonable explanation for his late submission of Dr. Mitchell's 2018 Letter and the electrodiagnostic examination results undermines any right he may have had to consideration of his additional evidence.").

Courts "have recognized that in crafting the statute governing remand, it was Congress's intent to permit remand pursuant to sentence six on a very limited basis." *Tyndall v. Berryhill*, No. 7:16-CV-334-RJ, 2018 WL 621294, at *5 (E.D.N.C. Jan. 30, 2018). Indeed, it would frustrate the good cause requirement entirely if claimants could electively wait to review an ALJ's reasoning before asking their treating providers for medical opinions. "It is the claimant's responsibility to provide the ALJ with all the medical records to show her disability." *Gilbert*, 2020 WL 7213486, at *11 (citing 20 C.F.R. § 404.970(b)(3)(iv) (requiring claimant to advise of the existence of or submit all evidence relating to disability) and 20 C.F.R. § 404.1512 (2019) (providing it is the claimant's responsibility to submit all known evidence relevant to the issue of disability)). Furthermore, Claimant's counsel had multiple opportunities during the administrative hearing to advise the ALJ regarding additional evidence, but Claimant declined to do so. (Tr. at 36, 65); *see also Gilbert*, 2020 WL 7213486, at *11 ("Counsel did not request the ALJ to hold open the record for the submission of additional evidence, nor did he advise the ALJ at any time after the hearing, but before he rendered his decision, of any such additional evidence. Given the circumstances before the court, I find Gilbert has failed to make the requisite good cause showing, thereby failing to meet her burden for remanding the case under sentence six.").

For all of the above reasons, Claimant clearly does not establish good cause to remand the action under sentence six for the Commissioner to consider previously

unavailable evidence. Given the lack of good cause, it is unnecessary to evaluate whether Dr. Webb's opinion was new or material. *See, e.g., Gilbert*, 2020 WL 7213486, at *11. The undersigned additionally concludes that there is not a reasonable possibility that Dr. Webb's opinion would change the outcome of the ALJ's decision. Claimant contends that Dr. Webb's statement is a "game changer" because there is a reasonable probability that it would prompt the ALJ to find that Claimant's fibromyalgia was a medically determinable impairment, her functional limitations precluded her past relevant work, and she would be absent or off-task in excess of acceptable tolerances outlined by the VE. (ECF No. 8 at 7).

However, the ALJ's determination that Claimant's fibromyalgia was not a medically determinable impairment was based on the lack of diagnosis and objective evidence of the disease. Dr. Webb provided an opinion, but not objective evidence, such as her clinical notes or findings, to support her opinion. In fact, Dr. Webb does not articulate whether the conclusions in the medical source statement were based on additional examinations and testing done after the ALJ's decision, or on evidence present in the record. If the examinations occurred after the ALJ's decision, they may have included new findings that were not present during the relevant period. On the other hand, if Dr. Webb based her statement on evidence already in the record, she would need to identify the relevant evidence in order for the Court to determine whether that evidence was cumulative of the findings and limitations considered by the ALJ in framing Claimant's RFC.

Still, Dr. Webb's opinion did clearly provide that she diagnosed Claimant with fibromyalgia and Claimant had all 18 positive tender points a few months after the ALJ's decision. Assuming *arguendo* that the opinion would change the ALJ's step two

22

determination that Claimant's fibromyalgia was not a medically determinable impairment, there is no reasonable possibility that it would impact the RFC determination and step four finding as Claimant suggests. The ALJ explicitly considered Claimant's fibromyalgia-related limitations that were supported by the record in the RFC assessment. The ALJ thoroughly considered Claimant's alleged limitations, pain, and fatigue; treatment; daily activities; and other evidence. (Tr. at 15-17). Dr. Webb's opinion would not reasonably impact those findings or the ALJ's determination that Claimant could return to her past relevant work.

Consequently, the undersigned **FINDS** that Claimant does not establish that the decision should be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of additional fibromyalgia evidence.

### B. Grid Rules

Claimant next argues that the ALJ erred by not finding her disabled pursuant to Grid Rule 201.06 or 202.06. (ECF No. 8 at 4-9). "The Grids are used to evaluate claims "where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." *Mohamadmajid S. v. Saul*, No. 5:18-CV-00005, 2019 WL 9075957, at *8 (W.D. Va. July 10, 2019) (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00).

Claimant argues that a "fair reading of the evidence" indicates that she could not perform her past relevant work as a legal investigator or any substantial gainful activity, for that matter. (ECF No. 8 at 7). She points to the additional evidence from Dr. Webb, and she states that the ALJ did not consider SSR 96-9p regarding her alleged inability to sit for six hours in a workday or use her hands due to swelling. (*Id.* at 8-9).

23

However, Claimant fails to explain how any of those issues or evidence relate to her challenge to the ALJ's decision regarding the Grid rules. Notably, Claimant asserts only two issues in this action. (ECF No. 8 at 4). As discussed in the preceding section, her first challenge concerns alleged "new and material" evidence from Dr. Webb. Claimant's only sentence four challenge argues that the Commissioner's decision is not supported by substantial evidence because the ALJ did not find Claimant disabled under the Grids. (ECF No. 8 at 4, 7, 9).

Yet, the Grids do not apply in this case because the ALJ found that Claimant could perform her past relevant work as a legal investigator. Therefore, the ALJ concluded that Claimant was not disabled at step four of the sequential evaluation and did not proceed to step five to consider Claimant's adjustment to other work. The undersigned **FINDS** that "[b]ecause the Grids are used only at step five, they are inapplicable to the inquiry here," and the ALJ did not err in failing to consider whether Claimant was disabled pursuant to Grid Rules 201.06 or 202.06. *Mohamadmajid*, 2019 WL 9075957, at *8. [1]

## VIII.   <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 8); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 11); and **DISMISS** this action from

---

[1] Claimant also mentions that "attention is called to the fact that" the ALJ concluded that she could return to her past work as an area supervisor, a position she never held. (ECF No. 8 at 8). However, the ALJ's actual step four finding clearly states that Claimant could return to her job as a legal assistant, which is consistent with the VE's testimony. (Tr. at 17, 62). The ALJ's subsequent reference to an area supervisor is very clearly a harmless misstatement or typographical error.

the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** September 22, 2021

Cheryl A. Eifert
United States Magistrate Judge

25